IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| First American Title Insurance Company, | C/A No. 3:12-cv-00800-JFA |
| Plaintiff, | |
| vs. | **ORDER ON MOTIONS** |
| | **FOR SUMMARY JUDGMENT** |
| Columbia Harbison LLC, | |
| Defendant. | |

## I.    INTRODUCTION

This matter is before the court on the parties' cross motions for summary judgment. More particularly, Plaintiff First American Title Insurance Company's (First American's) amended complaint sets forth six causes of action, the last five of which are based on certain provisions of a title insurance policy First American issued to Defendant Columbia Harbison, LLC (Columbia Harbison). Based on one or more of these provisions, First American requests that the court declare that no coverage is afforded to Defendant Columbia Harbison under the title policy.[1] *See* ECF No. 13. Columbia Harbison has moved for summary judgment on these five causes of action and on two "aspects" of one of its counterclaims, breach of contract. *See* ECF No. 61. First American has moved for summary judgment on its cause of action numbers two and four, on Columbia Harbison's counterclaim for breach of contract, and on Columbia Harbison's affirmative defense of estoppel. *See* ECF No. 62.

During briefing on these motions, First American acknowledged that its cause of action number five is moot and stated that it was not pursuing its cause of action number six. Therefore, this Order addresses First American's remaining causes of action (numbers two,

---

[1] First American has withdrawn its first cause of action, rescission of the title policy. *See* ECF No. 62-1, at 12 n.9.

three, and four); Columbia Harbison's counterclaim for breach of contract; and Columbia Harbison's defense of estoppel.

## II.    FACTUAL OVERVIEW

In general, this case involves Columbia Harbison's commercial development on a parcel which fronts Harbison Boulevard in Lexington County, South Carolina. The parcel is subject to a recorded easement for ingress, egress, and parking in favor of the adjoining landowner, B&L Harbison, LLC (B&L Harbison). Columbia Harbison obtained from First American a title insurance policy for its parcel, which later included an endorsement specifically directed to violation of the easement by the proposed commercial development. After construction began on the development to the extent that most of a large retaining wall had been completed, B&L Harbison sued Columbia Harbison in the South Carolina Court of Common Pleas, seeking among other things injunctive relief based on alleged violation of the easement. First American assumed Columbia Harbison's defense. The state court issued a temporary injunction halting construction, and while the state court suit was pending, First American filed the instant suit in this court seeking a declaration of no coverage or right of defense. Columbia Harbison asserted counterclaims for breach of contract and bad faith. Following a trial in the state court action, the state court issued a permanent injunction in favor of B&L Harbison. Columbia Harbison removed the construction that had been completed to that date, restored the easement area, and proceeded with a smaller project.

Thus, in this case on the title insurance policy, First American asserts that there is no coverage while Columbia Harbison claims approximately $4.5 million in losses based on First American's breach of its duty to indemnify its insured. Although the parties strongly dispute the correct interpretation of the title insurance policy, the material facts in this case do not appear to

2

be in dispute.  In their briefs, both parties assert that the title policy is unambiguous. Notwithstanding these assertions, both parties have submitted mountains of parol evidence which allegedly support their preferred constructions.  However, "[u]nder South Carolina law, the parol evidence rule generally excludes evidence which would give a perfectly clear agreement a different meaning or effect than that indicated by the plain language of the agreement."  *Harbour Town Yacht Club Boat Slip Owner's Ass'n v. Safe Berth Mgmt., Inc.*, 421 F. Supp. 2d 908, 911 (D.S.C. 2006) (citing *Taylor v. Taylor*, 353 S.E.2d 156 (S.C. 1987)).  Where, as here, the writing in question has an integration clause, "the parol evidence rule is particularly applicable."  *Id.* (citing *U.S. Leasing Corp. v. Janicare, Inc.*, 364 S.E.2d 202, 205–06 (S.C. 1988)).  As discussed in more detail below, the court agrees that the title insurance policy is unambiguous, and thus the extensive parol the parties submitted is not admissible to vary its plain meaning.  Accordingly, it is not discussed in this Order.

The relevant provisions of the title insurance policy are as follows.  First, the policy enumerates certain "exclusions" from coverage, of which Exclusion 3 is particularly relevant. "The following matters," among others,

> are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
> . . . .
> 3.  Defects, liens, encumbrances, adverse claims, or *other matters*
> (a) created, suffered, assumed, or agreed to by the Insured Claimant;
> (b) not Known to the Company, not recorded in the Public Records at Date of Policy, *but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy*.

(emphasis added).

Next, the policy is subject to eighteen "conditions."  In Condition 8, the policy states that it is "a contract of indemnity against actual monetary loss or damage sustained by the Insured

3

Claimant who has suffered loss or damage by reason of matters insured against by this policy."

This condition further states that

> (a) The extent of liability of the Company for loss or damage under this policy
> shall not exceed the lesser of
> > (i) the Amount of Insurance; or
> > (ii) the difference between the value of the Title as insured and the value
> > of the Title subject to the risk insured against by this policy.

Additionally, the policy sets forth a number of "exceptions" from coverage. Specifically, the "policy does not insure against loss or damage . . . that arise [sic] by reason of," among other things,

> 29. Easements, restrictions, terms and conditions set forth in Indenture Limited
> Warranty Deed from Baptist Healthcare System of South Carolina, Inc. dated
> October 31, 1996, recorded November 1, 1996 in Deed Book 3930, Page 113,
> Lexington County records. (affects Easement Parcel 2)

The easement referred to in Exception 29 is the easement in favor of B&L Harbison.

Finally, the policy also includes several endorsements. Condition 15 of the policy includes an integration clause, providing that "[t]his policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole." This Condition further provides, "[e]ach endorsement to this policy *issued at any time* is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, *(iii) extend the Date of Policy*, or (iv) increase the Amount of Insurance." (emphasis added). Endorsement 3 to the policy states:

> With regard to the non-exclusive easement for parking over the Fee Parcel
> established by Exception #29 hereof (the "Parking Easement") the Company (i)
> insures against *loss or damage resulting from an Order of a Court of competent
> jurisdiction requiring the removal of all or a portion of the structures (including
> but not limited to all extensions, vertical improvements, supports, and*

*loading/turn around areas) designated as Homegoods, Ulta, DSW and/or Staples (the "Structures") as shown on the site drawing dated 5-20-11, last revised 9-1-11 (the "Plans"),* a copy of which is attached to this Endorsement and made a part hereof; and (ii) agrees to provide a legal defense to the Insured in the event that legal proceedings are brought against the Insured alleging a violation of the Parking Easement, which, if said allegations are adjudicated in favor of the plaintiff, would cause the removal of the Structures constructed in accordance with the Plans.

*This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.* Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, *nor does it extend the effective date of the policy and any prior endorsements*, nor does it increase the face amount thereof.

(emphasis added). Thus, Endorsement 3, the interpretation of which is at the center of this case, provides affirmative coverage for certain losses or damages related to a violation of the easement referred to in Exception 29 caused by the proposed commercial development.

## III.    LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). When evaluating a motion under Rule 56, the court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party," *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990), and summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees of Md. Cmty. College*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not

5

himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## IV.    DISCUSSION

Columbia Harbison has moved for summary judgment on First American's second, third, and fourth causes of action and on certain aspects of its breach of contract counterclaim.  First American has also moved for summary judgment on its second and fourth causes of action and on Columbia Harbison's breach of contract counterclaim.  Further, First American has moved for summary judgment on Columbia Harbison's defense of estoppel.  Each of these issues is discussed in detail separately below.

### A. *First American's Second Cause of Action*

In the underlying state court lawsuit, B&L Harbison asserted causes of action for both breach of contract and trespass against Columbia Harbison, and B&L Harbison sought both injunctive and monetary relief.  After First American filed the instant lawsuit, Columbia Harbison and B&L Harbison settled the claim for monetary relief in the underlying state court lawsuit for $300,000 while allowing the claim for injunctive relief to proceed to trial.  First American's Amended Complaint seeks a declaration that "no coverage is provided to Columbia Harbison under the Policy for the trespass and breach of contract causes of action" B&L Harbison asserted against Columbia Harbison in the underlying state court lawsuit.  *See* ECF No. 13, at 11.  In its motion, First American also seeks a declaration that the title insurance policy does not cover Columbia Harbison's settlement with B&L Harbison.

First American asserts that it is entitled to summary judgment on this claim because Exception 29 to the title policy states that it does not cover "loss or damage" that "arise[s] by reason of" the easement.  Thus, according to First American, Exception 29 excludes all coverage

6

related to the easement. Then, because Endorsement 3 states that "with regard to the non-exclusive easement for parking over the Fee Parcel established by Exception #29 hereof . . . the Company (i) insures against loss or damage resulting from an Order of a Court of competent jurisdiction requiring the removal of all or a portion of the structures . . . ," Endorsement 3 returns some coverage related to the easement, but not for breach of contract or trespass. In short, the argument appears to be that the policy does not cover any cause of action against Columbia Harbison that seeks monetary damages. B&L Harbison sought monetary damages based on its breach of contract and trespass causes of action, so the policy does not cover them. Likewise, it does cover the settlement of these causes of action.

This argument is somewhat confusing, to say the least, as it fails to appreciate that a plaintiff may seek both monetary and injunctive relief based on a particular cause of action. Moreover, it ignores the language of Endorsement 3, which is written in terms of a particular type of relief a court may order—i.e., injunctive, as opposed to monetary—not in terms of any particular cause of action a plaintiff asserts. It is the state court's mandatory injunction order in the underlying lawsuit that is the "Order of a Court of competent jurisdiction" at issue in the instant lawsuit. However, that order is premised on Columbia Harbison's interference with B&L Harbison's right to ingress, egress, and parking in the easement area. This interference was the basis of B&L Harbison's breach of contract and trespass causes of action. Thus, First American is not entitled to a broad declaration that the title insurance policy does not cover the breach of contract or trespass causes of action asserted in the underlying state court lawsuit.

First American also seeks a declaration that the policy does not cover Columbia Harbison's $300,000 settlement. As an initial matter, Columbia Harbison has stated that it is not seeking this amount via its breach of contract claim, *see* ECF No. 61-1 at 11, and thus First

American's claim regarding the $300,000 settlement is moot.  First American acknowledged this, but it stated that, "[t]o the extent that any *additional* damages sought by Columbia Harbison are money damages *relating to* the breach of contract and trespass causes of action, these damages are . . . not recoverable."  ECF No. 70 at 32 (emphasis added).  As explained above, this is not correct.  It may very well be that the title policy does not cover certain money damages Columbia Harbison seeks, but it is not because the damages are "related to" the breach of contract and trespass causes of action.  Again, B&L Harbison sought injunctive relief pursuant to those same claims, and the language of Endorsement 3 contemplates loss or damage resulting from such injunctive relief.  If money damages Columbia Harbison seeks are excluded from coverage, it is because they are not "loss or damage resulting from an Order of a Court of competent jurisdiction requiring the removal of all or a portion of the structures" within the meaning of Endorsement 3.

Based on the above, First American's motion for summary judgment on its second cause of action is denied.  Columbia Harbison asserts that it is entitled to summary judgment on this cause of action "because there is no relief to be granted to First American" thereon.  ECF No. 61-1, at 11.  The court agrees, and thus Columbia Harbison's motion for summary judgment on this claim is granted.

### B.  First American's Third Cause of Action

First American's third cause of action asks for a declaration of no coverage or defense based on Exclusions 3(a) and 3(b) in the title insurance policy.  As noted above, these provisions respectively exclude loss or damage, costs, attorneys' fees, or expenses that arise by reason of "[d]efects, liens, encumbrances, adverse claims, or other matters" which were "(a) created, suffered, assumed, or agreed to by the Insured Claimant;" or "(b) not Known to the Company,

8

not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy." Columbia Harbison argues that cases construe this language as being read in the disjunctive, and First American did not disagree. *See Nat'l Credit Union Admin. v. Ticor Title Ins. Co.*, 873 F. Supp. 718, 728–29 (D. Mass. 1995). Thus, the court analyzes each exclusion separately below. *See Auto Owners Ins. Co. v. Newman*, 684 S.E.2d 541, 546 (S.C. 2009).

Exclusion 3(a) can be readily disposed of. In its Amended Complaint, First American asserted that the matters set forth in the underlying state court action by B&L Harbison "were assumed or agreed to by Columbia Harbison." Columbia Harbison acknowledges that it may have assumed or agreed to the easement when it purchased the land, but it notes that it did not assume or agree to any other defect, lien, encumbrance, adverse claim, or other matter. Columbia Harbison argues that the state court lawsuit was based on the *violation* of the easement, a risk that *First American* expressly assumed or agreed to via Endorsement 3. Thus, Columbia Harbison asserts that First American cannot exclude coverage based on an encumbrance Columbia Harbison agreed to while at the same time itself agreeing to insure against the risk that that same encumbrance is violated.[2] Notably, First American did not respond to this argument, and it has not sought summary judgment on this claim. Therefore, the court grants summary judgment to Columbia Harbison that Exclusion 3(a) does not exclude or limit coverage.

Next, First American contends that Exclusion 3(b) excludes coverage and defense because Columbia Harbison knew of and failed to disclose in writing certain "critical" matters

---

[2] Columbia Harbison also argues that case law construing similar exclusions holds that the exclusion only applies to intentional misconduct in causing a title defect. *See Ticor*, 873 F. Supp. at 728. This argument is unnecessary to dispose of First American's claim with respect to Exclusion 3(a), so the court expresses no opinion thereon.

before the issuance of Endorsement 3, which occurred on August 31, 2011.  Columbia Harbison generally acknowledges that it did not disclose these matters before the endorsement was issued, but it states that this does not matter for the purposes of Exclusion 3(b).  Rather, it says, Exclusion 3(b) by its express terms only applies to matters not disclosed in writing "prior to the date the Insured Claimant became an insured under this policy," which occurred on March 30, 2011.  According to Columbia Harbison, because the allegedly critical matters did not occur until after this date, Exclusion 3(b) is inapplicable.  First American's response is essentially that although Columbia Harbison became an insured under the policy on March 30, 2011, because there was no agreement providing coverage related to the easement until August 31, 2011, Columbia Harbison did not become an insured "under the Endorsement" until August 31, 2011.

First American's argument is unavailing.  Exclusion 3(b) does not refer to when Columbia Harbison became an insured under the endorsement, but rather when it became an insured under the policy.  Thus, First American is attempting to change the language of the agreement.  Moreover, Condition 15 and Endorsement 3 expressly state that endorsements do not extend the "Date of Policy" or the "effective date of the policy," respectively.  There appears to be only one effective date—the date of the policy—regardless of whether the policy includes an endorsement.

Accordingly, the court hereby grants Columbia Harbison's motion for summary judgment on the applicability of Exclusions 3(a) and 3(b).

### C.  First American's Fourth Cause of Action

First American's fourth cause of action focuses primarily on the interpretation of the language of Endorsement 3.  Endorsement 3 "insures against loss or damage resulting from an Order of a Court of Competent jurisdiction requiring the removal of all or a portion of the

10

structures (including but not limited to all extensions, vertical improvements, supports and loading/turn around areas) designated as Homegoods, Ulta, DSW and or Staples (the 'Structures') as shown on the site drawing dated 5-20-11, last revised 9-1-11 (the 'Plans')." Essentially, First American argues that the court should construe this language to provide coverage to Columbia Harbison only when the structures of the proposed commercial development are "completed." According to First American, because no structure within the meaning of Endorsement 3 was completed due to the state court injunction, the court should grant it summary judgment on the issue of coverage.

As an initial matter, and as noted above, the parties submitted a great deal of parol evidence with their motions, most of which is directed to the intended meaning of Endorsement 3. Again, this seems odd, as both parties also argue that the endorsement is unambiguous. In any event, the court finds Endorsement 3 to be unambiguous, and thus it is neither necessary nor proper to consider the parol evidence the parties submitted on this issue.

More particularly, First American's somewhat philosophical and semantic argument goes something like the following. A contemplated structure cannot exist until it has been built or constructed. Take, for example, construction of the Empire State Building. Although it is true that something existed during construction of that building, it was not the Empire State Building until it was complete. Thus, when Endorsement 3 refers to "the structures . . . designated as Homegoods, Ulta, DSW and or Staples . . . as shown on the site drawing," it is referring to the complete structures *only*. Similarly, when Endorsement 3 mentions a "portion," an "extension," a "vertical improvement," a "support," or a "loading/turn around area" of the structures, it is referring to a portion, extension, vertical improvement, support, or loading/turn around area of the complete structures *only*. Consequently, even though a very large retaining wall was built on

11

the site, it was not the structures shown on the site drawing because what the wall was designed to support was never finished. Likewise, the retaining wall *might have been* a portion, an extension, a vertical improvement, a support, or a loading/turn around area of the structures within the meaning of Endorsement 3, but only once the structures were complete.

The court disagrees. As the South Carolina Supreme Court has explained, "[t]he judicial function of a court of law is to enforce contracts as made by the parties and not to re-write or distort, under the guise of judicial construction, the terms of an unambiguous contract." *Dobyns v. S.C. Dep't of Parks, Recreation and Tourism*, 480 S.E.2d 81, 84 (S.C. 1997) (citation omitted). Thus, the courts "are without authority to alter a contract by construction or to make a new contract for the parties. Their duty is limited to interpretation of the contract made by the parties themselves . . . regardless of its wisdom or folly, apparent unreasonableness, or failure to guard their rights carefully." *Gilstrap v. Culpepper*, 320 S.E.2d 445 (S.C. 1984) (citations omitted). Under the plain meaning of Endorsement 3, there is coverage for loss or damage resulting from the state court mandatory injunction. Importantly, Endorsement 3 is not limited to "completed" structures, as the term "completed" is not found therein. Rather, Endorsement 3 refers to an order requiring removal of "all or a portion of" the structures.

The injunction ordered removal of the retaining wall, and this is clearly "a portion of" the structures designated as Homegoods, Ulta, DSW and/or Staples shown on the site drawing. Moreover, because the agreement includes a definition of the term "structure," First American's argument that a structure cannot exist until it is complete ignores the plain language of the title policy. Even if First American were to respond that a retaining wall only supports the structures shown on the site drawing (and thus it is not really a "portion" thereof), there is still coverage because the Endorsement specifically defines the term "structures" to include supports. As

Columbia Harbison notes, the retaining wall could also be thought of as a vertical improvement or an extension within the meaning of Endorsement 3. Accordingly, Endorsement 3 covers losses or damages resulting from the state court injunction in the underlying case.

Because the court finds that there is coverage under Endorsement 3, First American breached its duty to indemnify Columbia Harbison when it filed this action seeking a declaration of no coverage. Based on the above, the court grants summary judgment to Columbia Harbison and denies it to First American on the issue of coverage for loss or damage arising from the state court's permanent injunction under Endorsement 3.

### D. Columbia Harbison's Breach of Contract Counterclaim

Both parties have moved for summary judgment on Columbia Harbison's breach of contract counterclaim. First American asserts that it is entitled to summary judgment on this counterclaim because there is no coverage under the title policy. As discussed above, there is coverage, and thus First American's motion for summary judgment on this counterclaim is denied. Columbia Harbison requests a ruling (1) that the language of the endorsement covers consequential damages; and (2) that it is entitled to attorneys' fees in this action as a matter of South Carolina law. The court addresses each of these aspects of Columbia Harbison's motion separately below.

### 1. Consequential Damages

South Carolina courts have recognized that "[t]itle insurance is unique in that it is retrospective, not prospective." *Firstland Village Assocs. v. Lawyer's Title Ins. Co.*, 284 S.E.2d 582, 583 (S.C. 1981) (citation omitted). In other words, it "operates to protect a purchaser or mortgagee against defects in or encumbrances on title which are in existence at the time the insured takes title." *Id.* (citation omitted). More particularly,

> The risks of title insurance end where the risks of other kinds begin. Title insurance, instead of protecting the insured against matters that may arise during a stated period after the issuance of the policy, is designed to save him harmless from any loss through defects, liens, or encumbrances that may affect or burden his title when he takes it.

*Id.* (quoting *Nat'l Mortgage Corp. v. Am. Title Ins. Co.*, 261 S.E.2d 844, 847–48 (N.C. 1980)). Thus, in general, a title insurer is "liable for losses or damages caused by defects in the property's title, and defects for which title insurance provide coverage may generally be defined as liens and encumbrances that result in loss in the title's value." *Stanley v. Atlantic Title Ins. Co.*, 661 S.E.2d 62, 65 (S.C. 2008) (citations omitted); *see Whitlock v. Stewart Title Guaranty Co.*, 732 S.E.2d 626, 628 (S.C. 2012).

Still, as evidenced by the title policy at issue in this case, it is possible for applicants for title insurance to insure risks not covered in traditional title insurance policies. 1 JOYCE PALOMAR, TITLE INSURANCE LAW § 9:1 (2012–2013 ed.). For example, applicants may obtain an endorsement insuring against "loss resulting from damage to improvements on the insured land as a consequence of their being found to encroach on an easement" listed in the policy. *Id.* § 9:4. Endorsement 3 to the title insurance policy in this case appears to be of this ilk, in that it provides coverage for court-ordered removal of certain improvements to the insured property on the grounds that the improvements violate a specific risk that is excepted to in the base policy. The "loss or damage" First American insured against in Endorsement 3—whatever its scope may be—is not insurance against a failure of title, but rather affirmative coverage of a different type. Indeed, the title defect at issue in Endorsement 3, the parking easement, was known by the parties prior to issuance of the policy. Thus, as an initial matter, the discussion of damages with respect to traditional title policies in *Stanley* and *Whitlock* does not appear applicable to the insurance provided in Endorsement 3.

14

In any event, and regardless of the type of coverage at issue, it appears that the types of damages available to an insured in a case on a title insurance policy depend on the precise issue before the court. As noted above, Columbia Harbison's request for consequential damages is made pursuant to the terms of the title policy, in particular Endorsement 3. This is puzzling, however, because Columbia Harbison's counterclaim is for breach of contract. As Palomar explains, confusion often exists where title insurers (and, in this case, the insured) incorrectly argue that policy terms should govern the insurer's obligations both when the insurer performs the contract and when it has breached the contract. *See id.* § 10:18. "[W]here a covered loss occurs and the issue is what amount the insurer must pay to perform the contract to indemnify," the terms of the policy govern. *Id.* (citing *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 585 F.3d 833, 839 (5th Cir. 2009); *Miller v. Ticor Title Ins. Co.*, 93 P.3d 88, 91 (2004)). Thus, if a particular policy excludes consequential damages, they will not be available where performance under the policy is the issue.

In contrast, courts routinely and properly order consequential damages "as part of the standard measure of damages for breach of contract when an insurer failed to indemnify or act to defend or clear the title according to policy terms." *Id.*; *see, e.g.*, *Eureka Inv. Corp. v. Chicago Title Ins. Co.*, 743 F.2d 932, 938–40 (D.C. Cir. 1984); *Premier Tierra Holdings, Inc. v. Ticor Title Ins. Co.*, 2011 WL 2313206, at *8–*9 (S.D. Tex. Jun. 9, 2011); *Bohr v. First Am. Title Ins. Co.*, 2008 WL 2977353, at *6–*7 (M.D. Fla. Jul. 30, 2008); *Morgan v. Chicago Title Ins. Co.*, 2007 WL 3332820, at *2 (D. Haw. Nov. 8, 2007); *La Minnesota Riviera, LLC v. Lawyers Title Ins. Co.*, 2007 WL 3024242, at *4 (M.D. Fla. Oct. 15, 2007); *Mattson Ridge, LLC v. Clear Rock Title, LLP*, 2011 WL 2175832, at *5–*6 (Minn. Ct. App. Jun. 6, 2011), *aff'd in part, rev'd in part on other grounds*, 824 N.W.2d 622 (Minn. 2012); *Dreibelbiss Title Co. v. MorEquity, Inc.*,

861 N.E.2d 1218, 1222 (Ind. Ct. App. 2007); *Safeco Title Ins. Co. v. Reynolds*, 452 So. 2d 45, 48 (Fla. Dist. Ct. App. 1984); *Burks v. Louisville Title Ins. Co.*, 121 N.E.2d 94, 97 (Ohio Ct. App. 1953); *see also* V. Woerner, Annotation, *Measure, Extent or Amount of Recovery on Policy of Title Insurance*, 60 A.L.R.2d 972, § 8 (1958) ("[I]t is implicit in all the cases which involve [a breach of the insurer's covenant to defend] as well as a loss or damage to an insured owner or mortgagee resulting from a defect in the insured title that damage for breach of the covenant to defend are separate and distinct from damages for a defect in title, and that damages for breach of the covenant to defend may be recovered without regard to the usual policy provision limiting the insurer's liability to a specified amount, such limitation upon liability being tacitly deemed applicable only to loss or damage resulting from a defect in title."). Notably, "[i]t is an axiom of general insurance law that an insurer who has materially breached its contract to defend and indemnify cannot require its insured to comply with other contract terms." PALOMAR, *supra*, § 10:18. Permitting title policies to limit insurers' damages when they breach their contract would give insurers no incentive to comply with their contractual duties. *Id.* Courts have recognized that lost profits, *see La Minnesota Riviera*, 2007 WL 3024242, at *4; *Mattson Ridge*, 824 N.W.2d at 633, lost rents, *see Hedgecock v. Stewart Title Ins. Co.*, 676 P.2d 1208, 1211 (Colo. App. 1983); *Nebo, Inc. v. Transamerica Title Ins. Co.*, 98 Cal. Rptr. 237 (Cal. Ct. App. 1971), and costs from delays in construction, changing grading, and re-locating improvements, *see Burks*, 121 N.E.2d at 97, among other types of special damages, may be awarded in appropriate circumstances.

In this case, as described above, a covered loss occurred and First American breached the title policy by failing to indemnify Columbia Harbison according to policy terms. Thus, it is not

16

necessary for the court to determine whether consequential damages are available *according to the terms of the policy*. The issue is the appropriate measure of damages for breach of contract.

Based on the above discussion, to the extent Columbia Harbison seeks a ruling that it may attempt to prove consequential damages based on First American's breach of its duty to indemnify, it is entitled to summary judgment. The court wishes to emphasize, however, that consequential damages are not automatically awarded. Rather, they must be proven in accordance with the requirements of South Carolina law. For example, the South Carolina Supreme Court has explained that "[s]pecial damages are by their very nature conditioned by the particular circumstances of each case." *Stern & Stern Assocs. v. Timmons*, 423 S.E.2d 124, 125 (S.C. 1992) (citation omitted). It noted that "consequential damages occasioned by breach of contract may be recovered when such damages may reasonably be supposed to have been within the contemplation of the parties at the time the contract was made." *Id.* at 126 (quoting *Goodwin v. Hilton Head Co.*, 259 S.E.2d 611, 613 (S.C. 1979)) (internal quotation marks omitted). For special damages to be "within the contemplation of the parties at the time the contract was signed," the court stated that the party claiming such damages must show

> that the defendant was clearly warned of the probable existence of unusual circumstances or that because of the defendant's own education, training, or information, the defendant had reason to foresee the probable existence of such circumstances. While it is true that the defendant need not foresee the exact dollar amount of the injury, the defendant must know or have reason to know the special circumstances so as to be able to judge the degree of probability that damage will result from delayed performance. The special circumstances must exist when the contract was made.

*Id.* at 125 (citations and internal quotation marks omitted). Although Columbia Harbison set forth several examples of damages which it asserts that it will attempt to prove at trial, this court expresses no opinion thereon. Again, Columbia Harbison will have the burden to prove at trial all damages for breach of contract, actual or special, in accordance with South Carolina law.

17

2.  Attorneys' Fees

Columbia Harbison has also moved for summary judgment on First American's liability for attorneys' fees in this action as an element of its damages for breach of contract pursuant to *Hegler v. Gulf Ins. Co.*, 243 S.E.2d 443 (S.C. 1978).  As discussed below, *Hegler* is directly applicable to this case, and First American's attempt to distinguish it is wholly unpersuasive. Because coverage existed under the title insurance policy, First American breached its contract with Columbia Harbison by bringing the instant action to avoid coverage and defense. Therefore, First American is obligated to pay Columbia Harbison's attorneys' fees to defend the instant action.

More particularly, *Hegler* involves an exception to the general rule that attorneys' fees are only recoverable when authorized by contract or statute.  In *Hegler*, the appellant was insured under a general automobile liability insurance policy issued to him by the respondent, Gulf Insurance Company, and under which the respondent was obligated to defend appellant against any suit seeking damages on account of bodily injury or property damage.  While the policy was in force, the appellant's vehicle struck a tree, resulting in injuries to a passenger.  An action was filed against the appellant, and respondent subsequently notified the appellant that defense of the action for damages had been undertaken with a reservation of rights under the policy. Respondent did in fact defend appellant in the underlying damages suit, but it then brought a declaratory judgment action to determine its liability under the insurance policy.  As a result, appellant had to retain independent counsel.  The court decided the declaratory judgment action in the appellant's favor after the judge found that coverage existed under the policy.  Respondent settled that action for damages, but it denied appellant's demands for payment of attorneys' fees.

The South Carolina Supreme Court held that the lower court should have allowed attorneys' fees against the respondent. Specifically,

> While respondent agreed, under a reservation of rights, to defend the action for damages brought against appellant, it simultaneously brought the declaratory judgment action seeking a determination that it was not liable under the policy or obligated to defend. Appellant was, therefore, forced to employ counsel to defend against respondent's denial of any obligation to continue the defense of the damage action.
>
> The declaratory judgment action established respondent's obligation under the policy to defend the action for damages. If respondent had refused initially to defend, it would undoubtedly have been liable for the payment of counsel fees incurred by appellant in the defense of the damage action. Instead however of refusing initially, respondent began the defense and then sought, through the declaratory judgment action, to avoid any obligation to continue to defend. In order to obtain respondent's continued defense of the action for damages, it was necessary for appellant to employ counsel to resist the contention by respondent of lack of coverage. *There is no material difference in the legal effect between an outright refusal to defend and in undertaking the defense under a reservation of rights until a declaratory judgment is prosecuted to resolve the question of coverage.* In either event, an insured must employ counsel to defend in the first instance in the damage action and in the second in the declaratory judgment action to force the insurer to provide the defense. In both, the counsel fees are incurred because of the insurer's disclaimer of any obligation to defend.
>
> The action of respondent amounted to a wrongful breach of its contractual obligation to defend. The legal fees incurred by appellant, in successfully asserting his rights against respondent's attempt in the declaratory judgment action to avoid its obligation to defend, were damages arising directly as a result of the breach of the contract. . . . .

*Id.* at 444 (emphasis added).

First American attempts to distinguish *Hegler* by arguing that *Hegler* is only applicable where the insurer breached its obligation to defend the insured in the underlying action. It argues that because it did not refuse to defend Columbia Harbison in the state court action, hired counsel of Columbia Harbison's choice, and paid the bill for that counsel to defend the state court action to completion, this case does not fall under the *Hegler* exception.

This is clearly incorrect. *Hegler* involved an almost identical set of facts. As Columbia Harbison notes, First American reserved the right to unilaterally quit funding the defense at any time. It filed a declaratory judgment complaint seeking a ruling that no coverage is provided to Columbia Harbison and that First American is not required to defend Columbia Harbison in the action. As a result, Columbia Harbison was forced to retain independent counsel to defend the instant lawsuit. Because coverage existed under the title insurance policy, First American breached its contract with Columbia Harbison by filing the instant suit. Under *Hegler*, then, Columbia Harbison is entitled to an award of attorneys' fees, and the court grants its motion for summary judgment in this regard.

### E. *Columbia Harbison's Defense of Estoppel*

In its Answer, Columbia Harbison asserted as a defense that First American should be estopped from asserting certain of its causes of action based on First American's knowledge at the time the claim was presented, based on its conduct in accepting the defense without issuing a reservation of rights letter, and based on the knowledge of First American's appointed insurance agent at the time the contract was entered into. Essentially, Columbia Harbison alleges that First American changed its position on interpretation of Endorsement 3 from prior to the instant litigation, and its estoppel argument relates to whether First American should be allowed to advance an argument that First American's new interpretation is the *only way* Endorsement 3 can be interpreted. First American has moved for summary judgment as to this defense.

Based on the above discussion, however, this aspect of First American's motion for summary judgment is moot. In particular, the court has already determined that Columbia Harbison is entitled to coverage under Endorsement 3 and that First American breached its

contract with Columbia Harbison by denying coverage. Therefore, the court denies First American's motion for summary judgment on Columbia Harbison's defense of estoppel.

## V.     CONCLUSION

Columbia Harbison has moved for summary judgment on First American's second, third, and fourth causes of action and on certain aspects of its breach of contract counterclaim. First American has also moved for summary judgment on its second and fourth causes of action and on Columbia Harbison's breach of contract counterclaim. Further, First American has moved for summary judgment on Columbia Harbison's defense of estoppel.

Based on the foregoing, the court grants Columbia Harbison's motion for summary judgment on First American's second, third, and fourth causes of action and denies First American's motion for summary judgment on its second and fourth causes of action. Regarding Columbia Harbison's breach of contract counterclaim, the court denies First American's motion for summary judgment. The court grants Columbia Harbison's motion for summary judgment on its counterclaim both to the extent Columbia Harbison seeks to prove consequential damages based on First American's breach of contract at trial and on First American's liability for attorneys' fees for this action. Finally, First American's motion for summary judgment on Columbia Harbison's estoppel defense is denied as moot.

This case will proceed to trial on the question of damages for breach of the title policy and on Columbia Harbison's counterclaim for bad faith. Jury selection is scheduled for May 7, 2013.

IT IS SO ORDERED.

April 11, 2013
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge